Stephen J. Kottmeier (State Bar No. 077060)
Jennifer S. Coleman (State Bar No. 213210)
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:  (408) 286-9800
Facsimile:  (408) 998-4790

Attorneys for TY LEVINE AND KAREN LEVINE

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | CASE NO. 07-54072 ASW |
| Valley Corp. B., fdba RJH Corp., | |
| Debtor. | CHAPTER NO. 11 |
| | **TY LEVINE AND KAREN LEVINE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| Valley Corp. B. fdba RJH Corp., | Adversary Proceeding No. 07-5216 ASW |
| Plaintiff, | Date: June 17, 2008 |
| v. | Time: 1:30 p.m. |
| | Place: Courtroom 3020 |
| Ty Levine and Karin Levine, | Judge: Honorable Arthur S. Weissbrodt |
| Defendants | |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\587408.2
OPPOSITION PRELIMINARY INJUNCTION MOTION

Case: 07-05216   Doc# 28   Filed: 05/23/08   Entered: 05/23/08 15:56:01   Page 1 of 15

# TABLE OF CONTENTS

| | Page |
|---|---:|
| INTRODUCTION | 1 |
| STATEMENT OF THE FACTS | 2 |
|     A. Status Of State Court Litigation | 2 |
|     B. Scheduling Order Regarding Preliminary Injunction Motion | 3 |
| LEGAL ARGUMENT | 3 |
|     A. Legal Standard for Preliminary Injunction | 3 |
|     B. The Debtor Has Not And Cannot Establish A Reasonable Likelihood Of Successful Reorganization | 4 |
|     C. The Balance Of The Hardships Does Not Favor Issuance Of A Preliminary Injunction | 7 |
|         1. Haas Spends Almost No Time Performing Administrative Tasks Associated With The Chapter 11 Case | 7 |
|         2. Haas Has Spent Almost No Time Pursuing The Account Receivable On Behalf Of The Bankruptcy Estate | 8 |
|         3. There Are No Ongoing Operations To Take Haas' Time | 8 |
|         4. Haas' Talk Of Future Business And Bid Evaluation And Preparation For New Projects Is Hollow | 9 |
|         5. The Levines, Meanwhile, Will Suffer Substantial Harm If Injunctive Relief Is Granted | 11 |
|     D. Public Interest Tips In The Levines' Favor For Not Issuing A Preliminary Injunction | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

## CASES

Banis Restaurant Design, Inc. v. Serrano
 (2005) 134 Cal.App.4th 1035 ..................................................................................................6

Canter v. Canter (In re Canter),
 299 F.3d 1150 (9th Cir. 2002) ..................................................................................................3

Save Our Sonoran, Inc. v. Flowers,
 408 F.3d 1113 (9th Cir.2005) ...................................................................................................4

Solidus Networks, Inc. v. Excel Innovations, Inc., (In re Excel Innovations, Inc.),
 502 F.3d 1086, 2007 WL 2555941 at *5 (9th Cir. Sept. 7, 2007) .........................................4, 7

## STATUTES

California Business and Professions Code Section 7031 ................................................................6
California Business and Professions Code Section 7083 ................................................................6

# INTRODUCTION

On or about January 10, 2008, the debtor, Valley Corp. B ("Debtor"), made an Application for Issuance of Temporary Restraining Order and Order to Show Cause Re Issuance of Preliminary Injunction ("Application"), accompanied by a Points and Authorities in support of the Application ("Preliminary Injunction Motion") to enjoin creditors Ty and Karen Levine (the "Levines") from prosecuting the State Court Action[1] against non-debtor Ronald J. Haas ("Haas"), in his individual capacity, pending confirmation of a plan of reorganization. This memorandum is filed in opposition to Preliminary Injunction Motion.

Notwithstanding the multiple declarations submitted to support this motion, the Debtor failed to establish that the Levines should be enjoined from prosecuting the State Court Action against Haas. The Debtor claims that a preliminary injunction is necessary to prevent irreparable injury to the Debtor because Haas will have to exert effort to defend the action against him, thereby detracting from his efforts to reorganize the Debtor. None of the Debtor's claims, however, have merit. The Debtor failed to secure any of the construction projects mentioned in the declarations filed in support of this Motion, has no signed contracts to perform work, and is not currently conducting any business that generates revenue for the estate. Moreover, Haas actually spends very little time on administrative tasks associated with this bankruptcy. In short, the request for injunctive relief is unsubstantiated.

The Debtor also argues that reorganization is reasonably likely and injunctive relief should be granted because the Debtor will collect a $600,000 account receivable that will serve as the fund for payment of any allowed claim of the Levines. *See* Application, page 2, lines 24-26. Again, the Debtor's claim is hollow. According to Haas and Lester Sachs, Esq., Debtor's special counsel with respect to the collection of that account receivable, virtually nothing has been done to collect the money: no lawsuit has been filed; no mechanics' lien has been recorded; Haas has not met with or provided any documentation to Mr. Sachs; and Mr. Sachs was unaware he had been hired to pursue this collection. Moreover, potential mechanics' lien deadlines may

---

[1] All terms capitalized herein but not defined shall have the meaning ascribed to them in the Preliminary Injunction Motion.

626\587408.2

1

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54022 ASW — RFS NO. LHC1 CHAPTER 11

Case: 07-05216   Doc# 28   Filed: 05/23/08   Entered: 05/23/08 15:56:01   Page 4 of 15

have been missed which could impair the collection effort. In addition, the receivable is disputed and more than one (1) year old. In sum, the likelihood of collection, in reality, is very low. Combined with the Debtors' demonstrated inability to generate business and questionable license status, the Debtor cannot establish any likelihood of successful reorganization.

Accordingly, the Preliminary Injunction Motion should be denied.

## STATEMENT OF THE FACTS

The evidence in support of the Levines' Opposition is contained in the accompanying Declaration of Jay M. Ross ("Ross Decl."). The evidence in support of the Levines' Opposition also is contained in the Motion for Relief From the Automatic Stay to Allow Creditors to Prosecute State Court Action ("RFS Motion") and the Declaration of Jay M. Ross Filed in Support of the RFS Motion ("RFS Decl."), which were filed in the above-captioned bankruptcy case on December 28, 2007 and are incorporated herein by this reference as though set forth in full.

A complete recitation of the factual background between the Debtor, Haas and the Levines and the procedural background of the State Court Action is set forth in the Levines' RFS Motion. This Statement of Facts is limited to those procedural facts relevant to this Opposition. There were various facts that were uncovered in the deposition of Haas that will be set forth in the argument section below.

### A. Status Of State Court Litigation

The Levines litigated their claims in the State Court Action for over nine months prior to the filing of the Debtor's bankruptcy. The Levines' claims arise from a construction project at their home and they actively prosecuted those claims prior to the filing of the bankruptcy. The deposition of Haas was scheduled to occur the next business day after the Debtor filed its bankruptcy petition. The parties also participated in written discovery, which included discovery motions because of the Debtor's stone-walling in responding to that discovery. While the Debtor is correct that no depositions were taken in the State Court Action, it was not for lack of prosecution of the State Court Action by the Levines, but due to constant attempts of the Debtor and Haas to stall that litigation. RFS Decl., ¶¶ 6-8, and **Exhibit 1** thereto.

In terms of case status, prior to this bankruptcy filing, the Levines had made a request to have the State Court Action set for trial in April, 2008. Now, there is a status conference in the State Court Action scheduled on June 26, 2008. Ross Decl., ¶3.

### B. Scheduling Order Regarding Preliminary Injunction Motion

On May 7, 2008, this Court entered a Scheduling Order which stated, *inter alia*: (i) the deposition of Ronald J. Haas was to take place on May 13, 2008; and (ii) if the deposition went forward on May 13, 2008, the hearing on the Debtor's Preliminary Injunction Motion would be held on June 17, 2008 at 1:30 p.m. *See* Docket No. 68. After several attempts at scheduling the deposition of Haas in the above-referenced adversary proceeding and after entry of the Scheduling Order, the deposition of Haas took place during the afternoon of May 13, 2008. ("Haas Deposition").

## LEGAL ARGUMENT

### A. Legal Standard for Preliminary Injunction

11 U.S.C. § 105(a) provides, in pertinent part:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process

While the automatic stay set forth in 11 U.S.C. § 362 enjoins actions against a debtor, it does not enjoin actions against third parties, even if they are related to the debtor. Courts nonetheless have found authority under 11 U.S.C. § 105 to issue injunctions to protect the debtor by restraint of actions that would be prejudicial to the bankruptcy proceeding or to impede the reorganization process. *Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 (9th Cir. 2002).

In the non-bankruptcy context, the Ninth Circuit has consistently required trial courts deciding preliminary injunction motions to balance the moving party's likelihood of success on the merits and the relative hardship of the parties. The moving party must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor. *Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir.2005) (citations and internal quotation marks omitted).

As has been said many times regarding the two alternative formulations of the preliminary injunction test, these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum. *Solidus Networks, Inc. v. Excel Innovations, Inc., (In re Excel Innovations, Inc.),* 502 F.3d 1086, 2007 WL 2555941 at *5 (9th Cir. Sept. 7, 2007) (emphasis in original).

The usual preliminary injunction standard applies to stays of proceedings under 11 U.S.C. § 105(a). *Excel,* 2007 WL 2555941 at *7. In *Excel,* a reorganization case, the Ninth Circuit stated that in granting or denying an injunction under § 105, "a bankruptcy court must consider whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant." *Excel,* 2007 WL 2555941 at *7.

### B. The Debtor Has Not And Cannot Establish A Reasonable Likelihood Of Successful Reorganization

The first *Excel* factor, establishing that the Debtor has a reasonable likelihood of successful reorganization, cannot be met in this case. In arguing that reorganization is "extremely" likely, the Debtor rests almost entirely on its collection of a $600,000 account receivable from Luis Yanez for work performed by the Debtor's predecessor, "R.J. Haas Corp.," ("Yanez Receivable"). *See* Preliminary Injunction Motion, pages 8-9, lines 25-3. The Debtor further argues that the $600,000 receivable will be the fund used to pay creditors, including any amounts found to be owing with respect to the disputed claims which are the subject of the State Court Litigation. As a fallback, the Debtor contends that its active business operations will allow for reorganization in the unlikely event that the Yanez Receivable is insufficient to pay allowed claims. *See* Preliminary Injunction Motion, page 9, lines 12.

626\587408.2

4

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54072 ASW – RFS NO. JSC-1 CHAPTER 11

Case: 07-05216    Doc# 28    Filed: 05/23/08    Entered: 05/23/08 15:56:01    Page 7 of 15

As can be seen through the testimony of Haas and discussions with Lester Sachs, Esq., the likelihood that the Debtor can successfully reorganize based upon the collection of the Yanez Receivable is nothing more than a hope and a prayer.

On January 15, 2008, the Debtor filed its Application for Appointment of Lester Sachs as Special Counsel for Debtor ("Sachs Application"). *See* Docket No. 37. The Sachs Application stated, in pertinent part, that the "Debtor will require the post-petition services of counsel in order to file suit to collect amounts owing to Debtor. The collection is of **utmost important** [sic] **to the estate and the successful reorganization of the Debtor**, with the Debtor estimating the claim to be the sum of $600,000. **The claim will also require the perfection of a mechanics lien and compliance with the time sensitive deadlines associated therewith**." (Emphasis added). The Order Approving the Sachs Application was approved and entered on January 23, 2008. *See* Docket No. 38.

On March 11, 2008, Jay M. Ross, Esq., the Levines' counsel, requested permission from the Debtor's counsel, Lawrence A. Jacobson, Esq., to contact Mr. Sachs to inquire as to the status of the collection of the Yanez Receivable. On March 12, 2008, Mr. Jacobson refused Mr. Ross' request, but informed Mr. Ross that Haas was arranging a meeting with Mr. Sachs to provide the files and discuss the project. Ross Decl., ¶ 4, **Exhibit 1**.

Later, on April 17, 2008, *almost three (3) months after Mr. Sachs was appointed as special counsel*, Mr. Ross happened to see Mr. Sachs at the Santa Clara County Superior Court. Mr. Ross inquired as to the status of collection of the Yanez Receivable and was informed that Mr. Sachs was not working on and did not believe he had been asked to work on the collection of the Yanez Receivable. Ross Decl., ¶ 5, **Exhibit 2**. Mr. Ross immediately informed Mr. Jacobson of what he had learned from Mr. Sachs; Mr. Jacobson, however, never responded to that information. *Id.*

In addition, when Haas was deposed and asked whether Mr. Sachs was in the process of collecting the receivable, Hass testified that: (i) he did not know Mr. Sachs represented the Debtor with respect to the Yanez Receivable; (ii) he has made no effort to meet with Mr. Sachs to discuss the Yanez Receivable; (iii) he did not give any documents to Mr. Sachs for review or

626\587408.2

5

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54072 ASW – RFS NO. JSC-1 CHAPTER 11
Case: 07-05216   Doc# 28   Filed: 05/23/08   Entered: 05/23/08 15:56:01   Page 8 of 15

comment; (iv) the Debtor has not recorded a mechanics' lien in connection with the Yanez project; (v) no lawsuit has been filed to collect the Yanez Receivable; (vi) Mr. Yanez terminated the Debtor from his project over a year ago; (vii) Mr. Yanez disputes that he owes the Debtor's claim;[2] (viii) only a month ago, Haas sent Mr. Yanez a letter requesting payment; and (ix) he does not know whether the Debtor has lost its mechanics' lien rights with respect to the Yanez project. Ross Decl., ¶ 7, **Exhibits 3 - 11,** Haas Deposition Transcript, page 87, lines 22-25; page 89, lines 22-24; 91, lines 16-19; page 92, lines 16-18; pages 93-94, lines 21-1; page 94, lines 21-24; page 95, lines 4-11; page 96, lines 15-23; page 97, lines 5-8; page 99, lines 13-16.

Based on the foregoing, the Debtor has made almost no effort to collect the Yanez Receivable despite its contention that doing so was of the "utmost importance" to the estate and the successful reorganization of the Debtor, and would require perfection of a mechanics lien and compliance with time sensitive deadlines associated therewith. In fact, as a result of the Debtor's slumber, notwithstanding the appointment of special counsel in January 2008, the time frame within which a mechanics' lien can be recorded with respect to the Yanez project may have run and the right to record such lien may have been lost.

Furthermore, the Debtor's assertion that it can reorganize based upon ongoing business operations is empty. As the Debtor's five (5) Monthly Operating Reports and Haas' deposition testimony demonstrate, it has failed to secure any business and generates no revenue whatsoever. Additionally, it appears that the Debtor is not properly licensed as a contractor. Under California law, an unlicensed contractor cannot collect payment for work it performs.[3] Without proper license status, construction work by the Debtor will not result in any revenue.

---

[2] In the Haas Deposition, and despite his prior representations and filings in this bankruptcy case, Haas testified that the Yanez Receivable totaled approximately $690,000 rather than $600,000. Ross Decl., ¶ 6, **Exhibit 5**, Haas Deposition Transcript, page 92, lines 11-15.

[3] An unlicensed contractor is not entitled to any payment for the work it performs. *See* California Business and Professions Code § 7031; *see also, e.g., Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035. According to the California State Contractor's Board ("CSLB") website listing of licensed contractors in California, the Debtor is not identified as a licensed contractor. Haas testified at his deposition that he submitted papers to notify the CSLB of RJ Haas Corp's name change last month; however California Business and Professions Code § 7083 required notice of the name change to be submitted to the CSLB within 90 days of the change. Ross Decl., ¶¶ 7-8, **Exhibits 12-14**, Haas Deposition Transcript, page 30, lines 1-11. More importantly, the Levines have seen no such documentation, and no such name change submission is indicated on the CSLB website.

626\587408.2

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

Accordingly, the Debtor has no basis to conclude that a reasonable likelihood, or any likelihood of successful reorganization exists. The Preliminary Injunction Motion, therefore, must fail.

### C. The Balance Of The Hardships Does Not Favor Issuance Of A Preliminary Injunction

The second *Excel* factor, balancing of hardships, does not favor the issuance of a preliminary injunction against the Levines.[4] The Debtor argues that in reviewing the balancing of the hardships in injunctive relief cases, the court will look to the impact that continuation of the underlying litigation will have on the Debtor's efforts to reorganize. *See* Preliminary Injunction Motion, page 10, lines 1-3. To this end, the Debtor argues that if an injunction does not issue, Haas will be distracted by the State Court Action from his tasks to make this "a successful reorganization case." *See* Preliminary Injunction Motion, page 10, lines 14-16.

The tasks that the Debtor identifies that Haas must perform boil down to: (i) performance of administrative tasks associated with the Chapter 11 case; (ii) pursuing the account receivable on behalf of the bankruptcy estate; (iii) conducting ongoing operations; (iv) generate future business and evaluate and prepare bids for new projects. *See* Preliminary Injunction Motion, page 10, lines 16-19. Haas, however, is not allocating substantial time on any of these "tasks" and the Debtor cannot be allowed to hide behind statements that have no factual basis to support its request for the issuance of a preliminary injunction.

#### 1. Haas Spends Almost No Time Performing Administrative Tasks Associated With The Chapter 11 Case

While the Debtor does not identify the administrative tasks associated with the Chapter 11 case that Haas is involved in, the Levines assume these tasks primarily include conducting ongoing business, which is discussed more fully in Section 3 below, the preparation and filing of monthly operating reports and interactions with the Office of the United States

---

[4] While the strong showing of a likelihood of successful reorganization may lower the burden of demonstrating irreparable harm, as indicated above, the converse also is true. Consequently, as set forth in Section B of this Opposition, since the Debtor cannot demonstrate a likelihood of successful reorganization, the Debtor's burden of showing irreparable harm in this case is higher.

626\587408.2

7

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54072 ASW – RFS NO. JSC-1 - CHAPTER 11

Trustee.

Through his deposition testimony, Haas admits that he does not spend much time preparing the monthly operating reports. Ross Decl., ¶ 9, **Exhibit 15**, Haas Deposition Transcript, pages 138-139, lines 19-7. Haas also testified that currently the only time allocated in his schedule for working on items or projects with the Office of the United States Trustee in relation to this bankruptcy case is Haas' preparation of the monthly operating reports. *Id*, lines 13-18. Based upon these statements made in the Haas Deposition, the time that Haas spends on administrative tasks of the Debtor are minimal at best. In so far as the Debtor has no business, it is not surprising that the Reports require little effort.

### 2. Haas Has Spent Almost No Time Pursuing The Account Receivable On Behalf Of The Bankruptcy Estate

As set forth in Section B of this Opposition, Mr. Sachs was approved as special counsel to collect the Yanez Receivable on January 23, 2008. Despite this appointment, Haas and the Debtor have spent almost no effort to collect the Yanez Receivable. After being terminated from the Yanez project over a year ago, only one (1) demand letter has been to Mr. Yanez since the filing of this bankruptcy, and that letter was sent within the last month. Ross Decl., ¶ 10, **Exhibit 16**, Haas Deposition Transcript, pages 90, lines 3-11. No complaint has been filed; no mechanic's lien has been recorded; Haas has not even met with Special Counsel. Further, as was uncovered for the first time in this bankruptcy case, the Yanez Receivable is contested by Mr. Yanez and may not be collectable at all. Pursuit of the Yanez Receivable on behalf of the bankruptcy estate has taken and is likely to take only a minimal amount of Haas' time.

### 3. There Are No Ongoing Operations To Take Haas' Time

There have been five (5) Monthly Operating Reports (collectively, the "Monthly Operating Reports") filed in this case since its inception. *See* Docket Nos. 60, 63, 64, 65 and 66. The Monthly Operating Reports reflect that the Debtor is not currently performing any business functions. In addition, Haas has admitted that there are no current projects that the Debtor is providing construction services for, and there have been no contracts executed between the

626\587408.2

8

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54072 ASW – RFS NO. JSC-1 -CHAPTER 11

Case: 07-05216    Doc# 28    Filed: 05/23/08    Entered: 05/23/08 15:56:01    Page 11 of 15

Debtor and any customer regarding any potential project since the filing of the bankruptcy case. Ross Decl., ¶ 11, **Exhibits 17 – 19**, Haas Deposition Transcript, page 22, lines 10-13; page 23, lines 9-11; page 27, lines 19-23. The Debtor, therefore, does not have any current operations for Haas to be involved in and to devote his time.

### 4. Haas' Talk Of Future Business And Bid Evaluation And Preparation For New Projects Is Hollow

Since January, Haas has repeatedly claimed that the Debtor will have a great volume of work "in the upcoming months." The target start dates for the work has moved many times. There has been no detail or documentation to substantiate that claim and no work has occurred. Through the Declaration of Haas in Support of the Preliminary Injunction Motion ("Haas Decl.") and the Supplemental Declaration of Haas in Support of the Preliminary Injunction Motion ("Supplemental Decl."), Haas testifies that the Debtor has currently "booked two projects which are scheduled to commence in January, 2008 and February, 2008, as follows: (i) Project 1: residential construction project in San Jose with a contract price of $535,000; and (ii) Project 2: residential project in Cupertino with a contract price of $500,000. *See* Adversary Docket No. 7, ¶ 16; 15, ¶ 4.

Through the Second Supplemental Declaration of Haas in Support of the Preliminary Injunction Motion ("Second Supplemental Decl.") Haas testifies that Project 1 and Project 2 had been moved back to commence shortly after March, 2008. *See* Adversary Docket No. 24, ¶ 8. Through deposition testimony, Haas admitted that to date no final contract has been executed or even provided to the owner for Project 1. In addition, Haas admitted that no final contract had been executed or provided to the owner with respect to Project 2. Ross Decl., ¶ 12, **Exhibits 20 - 21**, Haas Deposition Transcript, page 72, lines 3-7; page 73, lines 14-18. These projects were supposed to commence approximately four (4) months ago, and it is now discovered that not only have they not started, but there are no executed contracts on the projects in place.

In addition, the Haas Decl. and Supplemental Decl. indicate that the Debtor was in the process of actively bidding on four (4) projects (the "Bidding Projects"), and if those projects were booked, the Debtor would commence the permit and building process as expeditiously as

626\587408.2

9

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54072 ASW – RFS NO. JSC-1 – CHAPTER 7

possible. *See* Adversary Docket Nos. 7, ¶ 16; 15, ¶ 5. Through the Second Supplemental Decl., Haas testified that the Debtor lost out on two (2) of the Bidding Projects, but had a new one (the "Fifth Bidding Project") it was working on. *See* Adversary Docket No. 24, ¶ 9. Through deposition testimony, Haas admitted that all of the Bidding Projects, as well as the Fifth Bidding Project, were effectively lost. Ross Decl., ¶ 13, **Exhibit 22 - 23**, Haas Deposition Transcript, page 73-74, lines 24-12; page 74-75, lines 25-3; 75, lines 16-18, page 75, lines 19-24.

Further, as set forth above, there are no current projects that the Debtor is actively working on, and there have been no contracts executed between the Debtor and any customer regarding any potential project. The Debtor is not generating any revenue to allow the continuation of the operation of the Debtor's business. Under no set of circumstances can the Debtor successfully argue that Haas is expending anything more than a minimal amount of time to generate future business and evaluate and prepare bids for new projects.

While Haas has indicated that he is actively marketing the Debtor to bring in new business to increase the assets of the estate and that there are potentially two (2) new projects that are in the early bidding stages, Haas freely admits that those contracts will be executed with "Ron Haas" – not the Debtor. Ross Decl., ¶ 14, **Exhibit 24**, Haas Deposition Transcript, page 41-42, lines 19-3. Moreover, there is no more likelihood that those projects will be awarded to Haas or the Debtor than any of the Bidding Projects described in Haas' declarations. Lastly, Haas has placed an "R.J. Haas Corp." sign placed in front of, among other properties, his home at 19341 Monte Vista in Saratoga for what he called marketing and advertising purposes. Ross Decl., ¶ 15, **Exhibit 25**, Haas Deposition Transcript, page 130, lines 16-25; page 131, lines 1-11; page 132-133, lines 24-9. This effort, however, is deceptive to the public, at a minimum, and of no value to the Debtor since "R.J. Haas Corp" no longer exists.

Given that Debtor is not generating any revenue to allow the continuation of the operation of the Debtor's business and that the contracts that currently being marketed are in the name of Ron Haas, the Debtor cannot claim that Haas is spending large amounts of time to generate future business and evaluate and prepare bids for new projects on behalf of the Debtor.

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

### 5. The Levines, Meanwhile, Will Suffer Substantial Harm If Injunctive Relief Is Granted

The Levines, meanwhile, will be greatly prejudiced if they are enjoined from prosecuting the State Court Action with respect to Haas. The Levines have expended considerable amounts of time, effort, and expense in preparing their claims for presentation, litigation and consideration in Santa Clara County Superior Court pursuant to particular state court procedures and state court practice. If the Levines are precluded from prosecuting their claims in the Santa Clara County Superior Court, those expenditures would be wasted and the Levines will be prevented from seeking the legal remedies to which they are entitled for the damages Haas has caused them. Every day that the Levines are preventing from pursuing their claims against Haas is another day of needless delay and prejudice.

### D. Public Interest Tips In The Levines' Favor For Not Issuing A Preliminary Injunction

The Debtor argues that the limited relevant public interest factors[5] weigh in favor of issuing the requested injunction. *See* Preliminary Injunction Motion, page 11, line 13. This is simply not the case. While the Debtor is correct in that the purpose of the Chapter 11 case and the application of the automatic stay is to provide a breathing spell that allows a debtor to reorganize its affairs, based upon the Monthly Operating Reports on file and the deposition testimony of Haas, the automatic stay already has provided the Debtor with a six month breathing spell and it has accomplished nothing. Based upon the fact that most, if not all, of the projects referenced in declarations executed by Haas in support of the Preliminary Injunction Motion have fallen through, no contracts regarding additional projects have been executed, and the Yanez Receivable has little chance of collection, this case cannot be reorganized and is most likely headed for conversion to a Chapter 7 case. So, no realistic argument can be made that this Debtor can reorganize or that it is in the public interest for it to do so.

---

[5] The Debtor does not reference what "limited relevant public interest factors" it is taking into consideration in making its argument, and as such, the Levines are unable to specifically address such factors as they are not specifically set forth by the Debtor.

626\587408.2

11

OPPOSITION PRELIMINARY INJUNCTION MOTION
CASE NO. 07-54072 ASW – RFS NO. JSC-1 CHAPTER 11

# CONCLUSION

Based upon the foregoing, the Levines respectfully request that this Court deny the Preliminary Injunction Motion, as the Debtor has not and cannot establish the legal standard for such relief.

Dated: May 23, 2008

HOPKINS & CARLEY
A Law Corporation

By: /s/ Jennifer S. Coleman
Jennifer S. Coleman
Attorneys for TY LEVINE and KAREN LEVINE