```
 1  LAWRENCE A. JACOBSON SB# 057393
    SEAN M. JACOBSON SB# 227241
 2  COHEN AND JACOBSON, LLP
    900 Veterans Boulevard, Suite 600
 3  Redwood City, California 94063
    Telephone: (650) 261-6280
 4  Facsimile:  (650) 368-6221

 5  Attorneys for Debtor
    Valley Corp. B
 6
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No.  07-54072 ASW |
| VALLEY CORP B. fdba RJH CORP, | Chapter 11 |
| Debtor. | |
| | |
| VALLEY CORP B. fdba RJH CORP, | Adv. Pro. No. 07-5216 ASW |
| Plaintiff, | **Date:   August 27, 2008**<br>**Time:  10:00 a.m.**<br>**Place:  Hon. Arthur Weissbrodt** |
| v. | |
| TY LEVINE; and KAREN LEVINE; | |
| Defendants | |

**DEBTOR'S REPLY BRIEF IN SUPPORT OF REQUEST TO
EXTEND TERM OF PRELIMINARY INJUNCTION**

**DEBTOR'S REPLY BRIEF IN SUPPORT OF REQUEST TO
EXTEND TERM OF PRELIMINARY INJUNCTION**                                         1

## I. INTRODUCTION

### A. Summary of Request for Extension

Debtor submits this Reply Brief in support of its Brief in Support of Request to Extend Term of Preliminary Injunction. In its initial brief Debtor established the necessity for, and propriety of, a continuance of the injunction in order to allow for confirmation of the Chapter 11 Plan which has been filed. The request for conditional approval of disclosures is currently pending, with dates related to the confirmation process to be issued upon approval of the disclosures. Further, the initial brief, and the terms of the Plan, set forth the treatment of the Levine claim, and in particular specify that Debtor is providing for 100% payment of any allowed claim of the Levines, with insurance potentially available to pay part or all of any claim.

In addition to providing for treatment of the Levine claim, Debtor has demonstrated its good faith efforts in working towards achieving successful reorganization by establishing the commencement of jobs procured for the benefit of Debtor, which projects will generate funds to be used in consummation of a proposed Plan.

### B. Summary of Opposition

In response to Debtor's initial brief, the Levines submitted their Opposition which objects to any continuance of the injunction. Despite the fact that the extension being sought is based upon submission of a 100% payment Plan, the Opposition makes no mention of the Plan, or its intent for the proposed 100% payment of any allowed claim of the Levines. Instead, the Opposition continues the emotional and vindictive attacks upon the Debtor and Mr. Haas which are neither productive nor of assistance to the Levines' position. The Opposition also fails to address the fact that the Plan provides a vehicle for adjudication of the Levines' asserted claims, and fails to establish any purported prejudice to the Levines.

Debtor reiterates that the continued injunction is necessary to allow for confirmation of the Plan, and to allow Haas to continue his attendance to Debtor's daily operations which continue to exceed his doctor's recommendation. Confirmation of the Plan will eliminate any alleged prejudice

to the Levines by providing a mechanism for them to present their claims, and will allow 100% payment of any allowed claim. In the event that the injunction is not extended, Debtor's sole officer and employee will be subjected to litigating claims in state court to the detriment of the reorganization case.

### C. Summary of Debtor's Reply

As is set forth in the moving papers, Debtor has filed and is seeking confirmation of a Plan that provides for full treatment and adjudication of the Levines claim. The extension of the injunction is necessary in order to facilitate confirmation, and without an extension the individual responsible for Debtor's reorganization efforts will be distracted from such efforts during a period which this Court has already found to be critical for reorganization.

Upon being presented with the proposed Plan, and the requested extension, the Levines were posited with two choices. The Levines could recognize that the Debtor has presented the opportunity to fully litigate its claims, with provisions for full payment of any allowed claim. Thus, the Levines could move forward with their claim pursuant to the Plan and cooperate with the scheduling and resolution of the adjudication of their claims. In the alternative, the Levines could oppose the proposed injunction, which if successful will allow them to proceed in state court only as to Haas, thereby essentially bifurcating their claim due to the continuing stay as to Debtor. The result of this second option will also have the likely effect of diverting the efforts of the individual that will be responsible for Debtor's consummation of the Plan that seeks to pay the Levines in full, thereby impeding the potential benefit to the Levines which is proposed in the Plan.

The Levines have inexplicably chosen the second course of action, with the apparent motivation being emotionally driven and based upon personal animosity towards Mr. Haas. This choice, in and of itself, provides a basis for continuing the injunction. In particular, the Levines decision to seek personal retribution for purported claims against Haas rather than working towards adjudication and payment of such claims, shows that continued pursuit of the state court litigation will serve as an incredible distraction for Haas.

**DEBTOR'S REPLY BRIEF IN SUPPORT OF REQUEST TO EXTEND TERM OF PRELIMINARY INJUNCTION** 3

Case: 07-05216   Doc# 72   Filed: 08/20/08   Entered: 08/20/08 20:14:46   Page 3 of 9

## II. DEBTOR HAS PRESENTED EVIDENCE IN SUPPORT OF ITS REQUEST FOR AN EXTENSION OF THE INJUNCTION

The Levines initially urge that Debtor has failed to provide any "evidence" in support of its request for extension. Debtor first notes that the request for continued injunction is based upon its efforts to confirm the proposed Chapter 11 Plan. The Plan was filed on August 6, 2008, concurrently with the request for approval of disclosures, and the initial brief seeking an extension with the injunction. Debtor's initial brief is explicitly clear that it is based upon the filing of the Plan, and to allow confirmation of the Plan. (Initial Brief 2:9-18). The Chapter 11 Plan is signed by Mr. Haas as the appointed responsible individual in this case. Thus, Debtor has presented its request based upon the Plan which has been filed as represented.

Debtor has likewise presented the doctor's certificate from Dr. Chi, and with this Reply Brief is providing a further Declaration regarding the status of pending jobs, and three prospective new projects.

## III. DEBTOR HAS NOT "TRANSFERRED ASSETS" BUT RATHER HAS EFFECTUATED AND DISCLOSED A MECHANISM FOR OBTAINING FOR THE DEBTOR THE BENEFIT OF PENDING AND PROSPECTIVE PROJECTS

### A. The Modified Execution of the Contracts Expressly Maintains the Benefit of the Contracts For the Debtor During the Reorganization Case

In its initial brief, and in the proposed Plan, Debtor discloses that it has developed concern due to the vigorous impediments to reorganization which it has faced during the pendency of this case. Debtor fully explained and articulated the modified procedure regarding execution of the contracts, and confirmed that Debtor is to receive the economic benefit of each contract, as was discussed at the prior hearings and in prior declarations. In particular, the Debtor disclosed that the procedure allows for "(a) continuity of the projects for the homeowner as R. J. Haas Construction Corp. will be responsible to the homeowner for completion and (b) receipt of the economic benefit of the projects for the debtor estate."

Of particular note is that, while Debtor is not the signatory to the agreement for purposes of

responsibility for performance, <u>the procedure retains the economic benefit for the estate</u>. At the evidentiary hearing, and in prior briefs, the Levines sought to persuade the Court that the projects at issue which were intended to benefit non-debtor parties. Indeed, the context of such discussion involved the likelihood of reorganization, and whether Debtor would obtain the benefit from these projects. As is detailed in the initial brief and Plan, Debtor continues to retain the benefit of the project, which is the concern discussed at the prior hearing. The Court, and the Levines, were not concerned with Debtor assuring that it was liable for obligations, rather the focus was on Debtor receiving the benefits.

Further, in terms of reorganization, the procedure will have no impact during a successful reorganization case, as Debtor will obtain the net economic benefits, and the projects will be performed. Thus, the modified manner of execution still supports the likelihood of reorganization by allowing Debtor to obtain the profit during the Chapter 11 case and in furtherance of reorganization. Debtor does not read the Levines' brief to suggest any harm to the Debtor estate based upon this modified procedure.

In response to Debtor's contention that the modified procedure was required to protect continuity, largely due to the positions taken by the Levines, the Opposition appears to argue that the Levines should not be viewed to be impeding the reorganization process. Debtor has articulated its position that, upon reflection, the modified procedure was necessary, and that the pressure in the reorganization case was being placed upon the Debtor in the form of the Levines ongoing efforts to oppose the injunction. Absent the issuance of the injunction Haas will likely be unable to guide the Debtor through the reorganization process during its critical stages. Failure to reorganize can result in conversion or dismissal of the case. Further, as is discussed above, the Levines are choosing to seek to litigate against Haas individually in lieu of obtaining full payment in this bankruptcy case. Thus, the modified procedure was necessary in the event that the Levines choices result in an inability to reorganize.

**DEBTOR'S REPLY BRIEF IN SUPPORT OF REQUEST TO EXTEND TERM OF PRELIMINARY INJUNCTION** 5

Case: 07-05216   Doc# 72   Filed: 08/20/08   Entered: 08/20/08 20:14:46   Page 5 of 9

### B. The Debtor Has Not "Transferred Assets," but Rather Has Obtained Business During its Ongoing Operations.

The Levines halfheartedly argue that the Debtor has "transferred its assets," apparently basing this argument on the execution of the contracts which are indisputably made for the benefit of Debtor during this Chapter 11 case. The Levines cite to no authority in support of this contention.

As has been explained by the Debtor, the modified execution procedure was performed in a manner which retains the benefit for the estate. The execution of the contracts did not transfer an asset of the estate, but rather *created* a benefit to the estate designed to facilitate, not deprive, debtor of work. The Levines do not articulate what constitutes "the most valuable asset of the estate" or how assets were transferred by creating this benefit. Indeed, if this case had proceeded as the Levines advocated, the Debtor and Mr. Haas would be fully enmeshed in state court discovery and pre-trial proceedings and the Debtor would have the benefit of no jobs.

Further, pursuant to 11 U.S.C. § 1107 the Debtor in Possession is authorized to proceed with its operations, and pursuant to 11 U.S.C. § 363(c) can enter into appropriate transactions in the ordinary course of business without the necessity of notice or hearing.

In sum, the Debtor has obtained business necessary to proceed with its efforts to effectuate a successful plan of reorganization. In doing so the Debtor has created benefits for the estate, and has not "transferred the most valuable assets of the estate." Debtor also highlights the irony of the Levines' argument. The Levines have strenuously urged to this Court that the injunction should be denied because Debtor is unable to reorganize, that the projects have no value, and that therefore the reorganization efforts "ring hollow." Now, apparently recognizing the fallacy of the prior argument, the Levines argue that the very projects that they urged were worthless now constitute the most valuable asset of the estate.

### IV. MR. HAAS HAS NOT "COMMITTED PERJURY"

The Levines continue with a personal attack accusing Mr. Haas of committing perjury. Again, Debtor has explained the conundrum which has required the modification of the execution of

the contracts. Upon preparing the Chapter 11 Plan, and contemplating the consequences of continued resistance to reorganization caused by the Levine's pressure in the bankruptcy proceeding, Debtor believed it necessary to execute the contracts in a manner which would provide continuity to the property owners, while also retaining the benefits to the Chapter 11 Debtor. The current procedure achieves these purposes and was disclosed in the Plan and in the initial brief.

While Haas did intend that Debtor would execute the contracts in its own capacity, the alteration was deemed necessary following contemplation after the testimony. The effect of the modification does not alter the foundation of Haas' prior testimony, i.e., that the projects will provide the profits that will allow for reorganization. The Court's ruling on the injunction proceedings reflects that its concern with regard to the profits appeared to relate to the debtor's ability to reorganize through profits. (*See* Transcript 13:23-25).

Debtor again notes that this change was brought to the Levines' and the Court's attention by the Debtor. Debtor further notes that the Levines have not urged that the change alters the foundation of the testimony; that this procedure will affect the established future profits which served as the Court's basis for issuing the initial injunction; and did not seeking any relief from the Court based upon any purported effect that the change has on the Court's ruling.

In this section of the argument the Levines also argue that "the Levines believe, and it appears that the Debtor and Mr. Haas are working on other projects under the name 'RJ Haas Corp.'" The Levines present a Declaration attaching two pictures and indicating that Mr. Levine has reviewed county records to obtain information as to Debtor's projects. As has been previously briefed, Debtor has been required to identify the project names without disclosing the names and locations due to prior interference by the Levines with Debtor's operations. It appears that this activity is continuing, as rather than recognize and move forward with the proposed liquidation and payment of their claim, the Levines appear to be undertaking some form of personal reconnaissance.

Regardless, the filing of this bankruptcy case did not, and does not, preclude R. J. Haas Construction Corp., a separate entity, from conducting operations. As is admitted in the Levine

**DEBTOR'S REPLY BRIEF IN SUPPORT OF REQUEST TO
EXTEND TERM OF PRELIMINARY INJUNCTION** 7

Case: 07-05216   Doc# 72   Filed: 08/20/08   Entered: 08/20/08 20:14:46   Page 7 of 9

Declaration, the reconnaissance performed by Mr. Levine reveals nothing other than the ongoing operations of the separate entity which is unaffected by this bankruptcy case, and the extent of Mr. Levine's emotional commitment to attempt to frustrate the success of the Debtor.

## V. DEBTOR HAS PRESENTED COMPETENT EVIDENCE REGARDING MR. HAAS' MEDICAL CONDITION AS REQUIRED BY THE COURT

In its prior ruling the Court stated that if Mr. Haas' health remains an issue, and to the extent that the requested extension is based in part upon such health conditions, that "the supplemental papers shall include competent evidence to support that argument." (Transcript 21:3-4). The Court further instructed that the evidence must "state whether his physician has recommended that he limit his hours of work, and if so, how many hours he may work." (Transcript 21:8-10).

In making its prior ruling, the Court accepted the certificate from Dr. Chi in the same form as it has been presented with the request for extension. The doctor's certificate likewise sets forth the condition suffered by Mr. Haas, and the recommended hours that he work per week. Counsel for Debtor was unable file the Declaration until August 8, 2008. The Levines have not alleged any prejudice based upon this filing, and the Court did not specifically provide a date for the filing of the doctor's certificate.

The Levines allege that the letter is hearsay, and "does not meet the criteria of the court." Debtor submits that the letter is a properly authenticated document, and was in fact requested by the court, and previously approved in this form. Further, the Court did not specify that the doctor's certificate must be from a cardiologist. While the Court did refer in prior hearings to Mr. Haas' cardiologist, Mr. Haas explained that Dr. Chi worked in conjunction with his cardiologist at Kaiser Permenente. Haas further testified that obtaining certificates from the cardiologist was a difficult procedure, and that in his case Dr. Chi was the appropriate doctor designated for issuing such a certificate. Thus, the final ruling did not require that the certificate be issued by a cardiologist.

In addition, Haas consents, pursuant to the Court's invitation, to the Hon. Arthur S. Weissbrodt calling Dr. Chi directly to discuss his heart condition. While Haas consents to this

**DEBTOR'S REPLY BRIEF IN SUPPORT OF REQUEST TO
EXTEND TERM OF PRELIMINARY INJUNCTION**  8

Case: 07-05216   Doc# 72   Filed: 08/20/08   Entered: 08/20/08 20:14:46   Page 8 of 9

limited disclosure, his medical history is to be provided for Judge Weissbrodt's information only, and not to be disclosed to the parties, or otherwise disclosed in the Court's records.

## VI. THE LEVINES HAVE NOT, AND CANNOT, ESTABLISH ANY PURPORTED PREJUDICE

Debtor briefly reiterates that the Levines have not alleged any purported prejudice that will result by a continuance of the injunction, relying instead on inflammatory arguments. Debtor submits that the Levines cannot establish prejudice, especially in view of the fact that by its Chapter 11 Plan Debtor is seeking to liquidate and pay any allowed claim of the Levines. Indeed, Debtor cannot comprehend a more beneficial result to the Levines than confirmation of a Plan that will pay any allowed claim, and resolve the disputes among the parties.

Further, the Levines previously urged to this Court that they would be forced to waste or duplicate their prior litigation efforts if the injunction issued. However, under the terms of the proposed Plan the Levines will have their day in court, and in the event that they are successful a structure for payment will be established. To the contrary, if the injunction is not extended, the parties will litigate the claims twice, once in state court as to Haas, and once in bankruptcy court as to the Debtor.

## VII. CONCLUSION

Based upon the foregoing, Debtor respectfully requests that the Court extend the Preliminary Injunction for an additional seventy five (75) day period. Debtor likewise invites the Levines to seek resolution of the parties dispute as is proposed in the Chapter 11 Plan, and respectfully suggests that such cooperation will result in a more efficient, expeditious, cost-effective and mutually beneficial resolution.

Dated: August 20, 2008                     COHEN AND JACOBSON, LLP

                                           By: /s/ Lawrence A. Jacobson
                                               Lawrence A. Jacobson